IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICHOLAS SELLMAN,<br><br>    Plaintiff,<br><br>v.<br><br>AVIATION TRAINING<br>CONSULTING, LLC,<br><br>    Defendant. | Case No. CIV-22-365-D |

## ORDER

Before the Court is Defendant Aviation Training Consulting, LLC's Motion for Summary Judgment and Brief in Support [Doc. No. 66]. Plaintiff Nicholas Sellman filed a Response [Doc. No. 86], and Defendant filed a Reply [Doc. No. 92]. Thereafter, the Court allowed Plaintiff to file a Supplemental Response [Doc. No. 96] and Defendant to file a Sur-Reply [Doc. No. 99]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff is a Marine veteran with a disability rating assigned by the United States Department of Veterans Affairs (VA). Defendant is a disabled American veteran-owned company providing aircrew training services to the Kuwaiti Air Force on behalf of the United States Department of Defense. From April 2017 to April 2018, Plaintiff worked for Defendant in Kuwait as a Loadmaster Instructor for the KC-130 military aircraft. Plaintiff's one-year contract was not renewed by Defendant. Plaintiff asserts three causes of action against Defendant: 1) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. (ADA), as amended by the ADA Amendments

1

Act of 2008; 2) retaliation prohibited by the ADA; and 3) employment discrimination on the basis of Plaintiff's military service, in violation of the Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301, *et seq*. (USERRA).

Defendant seeks summary judgment in its favor with respect to each of Plaintiff's causes of action. For Plaintiff's ADA claims, Defendant argues that Plaintiff is not "disabled" as defined by the ADA; that Defendant decided not to renew Plaintiff's one-year contract due to his marginal job performance; and that Plaintiff cannot show pretext. With respect to Plaintiff's USERRA claim, Defendant contends that Plaintiff's allegations of disability related discrimination cannot support a USERRA claim, which statute prohibits employment discrimination based on a person's military status.

## UNDISPUTED FACTS[1]

Defendant employed Plaintiff as a Loadmaster Instructor under a one-year contract. Defendant was not obligated to renew or extend Plaintiff's contract past the one year, and Plaintiff knew there was no guarantee of an extension. Plaintiff worked in

---

[1] This statement includes material facts that are properly supported by the asserting party and not opposed in the manner required by FED. R. CIV. P. 56(c). Plaintiff did not dispute any of Defendant's Undisputed Material Facts (UMF). Pl.'s Resp. at 3; Pl.'s Supp. Resp. at 1-3. Accordingly, the Court accepts as true all material facts asserted and properly supported by Defendant's Motion for Summary Judgment. LCvR56.1(e) ("All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule."). The Court may consider evidence in the record not specifically cited by the parties, *see* FED. R. CIV. P. 56(c)(3), but the Court is not required to comb through Plaintiff's evidence to determine the bases for a claim that a factual dispute exists. *See Espinoza v. Coca-Cola Enterprises, Inc.*, 167 F. App'x 743, 746 (10th Cir. 2006) ("[W]here the nonmovant failed to support his case with adequate specificity, we will not fault the court for not searching the record on its own to make his case for him (nor will we take on that role of advocacy).").

Defendant's Kuwait offices from April 3, 2017, until his contract ended on April 9, 2018.

As a Loadmaster Instructor, Plaintiff was required to maintain an FAA flight certificate. Under the FAA Regulations, it is unlawful for a person to exercise airman privileges without an FAA flight certificate. Plaintiff understood that he was required to maintain an FAA flight certificate for his position.

When Plaintiff applied for the Loadmaster Instructor position, he disclosed that he had a 90% VA disability rating. On November 14, 2017, during Plaintiff's employment with Defendant, the VA notified Plaintiff that his disability rating for PTSD and an unspecified sleep disorder had been increased from 30% to 70%, which gave Plaintiff a combined VA disability rating of 100%.

After Plaintiff received his 100% VA disability rating, he told co-worker Jean Colley and Director of Operations Richard Sofge. It is undisputed that Sofge then made inappropriate comments to Plaintiff regarding his VA disability rating. Although there is some dispute as to Sofge's precise comments, Sofge referred to individuals who "game the system" and how the VA disability system is broken. Plaintiff alleges that Sofge sarcastically called him a "cripple" and a "criminal" for collecting disability benefits, implying that Plaintiff was not actually disabled.

On November 17, 2017, Plaintiff made a complaint to James Williams, Defendant's Director of Human Resources, regarding Sofge's comments. Williams investigated the incident, and Vice President of International Operations Dennis Stephens counseled Sofge that his comments were inappropriate and would not be tolerated. It is undisputed that Sofge did not make any other insensitive or inappropriate comments to

Plaintiff after his counseling.

Plaintiff was notified on November 29, 2017, that the FAA needed additional information before renewing Plaintiff's flight certificate. Without an FAA flight certificate, Plaintiff would not be eligible to fly. Plaintiff responded to the November 29 letter on January 5, 2018. In January and February of 2018, there was confusion within Defendant's offices as to whether Plaintiff was eligible to fly due to the uncertainty regarding Plaintiff's FAA flight certificate. During this time, both Williams and Sofge checked in with Plaintiff on the status of his flight certificate. Ultimately, it was Plaintiff's responsibility to maintain his flight certificate and flight eligibility.

In January of 2018, Graham Mueller, Defendant's Chief Pilot in Kuwait, conducted a performance review of Plaintiff. Mueller rated Plaintiff as "marginal" in dependability, communication skills, and initiative. Mueller provided additional comments that Plaintiff "[h]as difficulty completing assigned tasks without direct supervision"; has "difficulty communicating with others in the office" and "will not provide necessary information unless asked directly multiple times"; "[c]onstantly requires direction in order to accomplish assigned tasks"; and "[w]ill not perform any tasks outside directed duties nor provide ideas on improving projects or workspace processes."

On February 5, 2018, Mueller e-mailed Sofge Plaintiff's performance review with the additional comment that, from Mueller's relative value rankings, Plaintiff was "ranked 3/3 for loadmaster instructors and his overall average [fell] at the bottom of the aircrew

stack." On February 5, 2018, Sofge forwarded Mueller's review to Williams and Stephens. On February 27, Sofge gave his recommendation that Plaintiff's contract not be renewed.

Michael Young, Defendant's Vice President of Operations, had previously held Sofge's position in Kuwait for the first several months of Plaintiff's employment. Before Young left Kuwait, he observed that Plaintiff's performance was below other Loadmaster Instructors and told Plaintiff he needed to "tighten it up" with his job performance.

As of March 1, 2018, Plaintiff's FAA flight certificate had expired and Plaintiff was no longer eligible to fly. For Williams, Stephens, Young, Sofge, and Defendant's founder and CEO, Robert Cox, Plaintiff was the first flight crew employee to allow an FAA flight certificate to expire.

Neither Sofge nor Williams had the power to hire, renew contracts, or terminate employees. Young and Stephens made the decision not to renew Plaintiff's contract because of his subpar performance, as communicated by Mueller's performance review and Young's opinion of Plaintiff when he was Plaintiff's supervisor in Kuwait. Cox gave final approval to not renew Plaintiff's contract based on Mueller's and Young's perceptions of Plaintiff's subpar performance. Cox found it further indicative of Plaintiff's performance issues that he did not maintain an FAA flight certificate or flight eligibility, which was required for Plaintiff's position. When Cox decided to not renew Plaintiff's contract, he did not know about Plaintiff's complaint to Williams regarding Sofge's inappropriate comments or specific reasons why Plaintiff's FAA flight certificate had expired.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I. USERRA

Plaintiff's USERRA claim fails as a matter of law. "The USERRA prohibits employers from terminating service-members based on their membership in or obligations to the armed services." *Starr v. QuikTrip Corp.*, 655 F. App'x 642, 645 (10th Cir. 2016)

6

(citing 38 U.S.C. § 4311(a)). An employee who brings a claim under USERRA "bear[s] the initial burden of showing by a preponderance of the evidence that [his or her] military service was a substantial or motivating factor in the adverse employment action." *Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (internal quotation marks and citation omitted). Military status "is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Lewis*, 217 F. App'x at 786 (internal quotation marks and citation omitted).

Plaintiff has failed to establish a genuine issue of material fact as to whether his prior military service was a motivating factor in Defendant's decision to not renew Plaintiff's one-year contract. Plaintiff's USERRA claim is premised not on his prior military service, but on his disability status and, more particularly, his receipt of a combined 100% VA disability rating. In support of his USERRA claim, Plaintiff alleges that Sofge berated him after learning that he had received a 100% VA disability rating.[2] As USERRA's protections do not extend to disability status, Plaintiff has failed to establish a claim under USERRA. *See Ferrell v. Ezpawn Oklahoma, Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *3 (W.D. Okla. July 16, 2019) (finding allegation of discrimination "due to the disability [the plaintiff] suffered during his military service" outside the scope of USERRA); *see also Wolfgram v. G4S Secure Solutions (USA), Inc.*, 2018 WL 5016337, at *3 (N.D. Ind. Oct. 15, 2018) ("[T]he fact that [a plaintiff's] alleged disability began during his military service does not in itself implicate USERRA absent additional facts.").

---

[2] Sofge is also a disabled American veteran. *See* UMF No. 14.

Plaintiff has similarly failed to provide evidence relating to the factors upon which a discriminatory motivation against military service may be reasonably inferred, which include:

> [P]roximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility toward members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009) (citation omitted). Plaintiff does not allege that any comments were made to him regarding his military service or status. It is undisputed that Plaintiff's veteran status was not only known to Defendant before hiring Plaintiff but was a preferred qualification for the Loadmaster Instructor position. *See* UMF No. 3; Def.'s Mot., Ex. 39. Plaintiff has not alleged disparate treatment compared to any non-military employees. Accordingly, Defendant is entitled to summary judgment on Plaintiff's USERRA claim.

## II.   ADA Discrimination and Retaliation

The ADA prohibits discrimination "in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Further, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

8

Where a plaintiff relies on indirect evidence to establish ADA discrimination or retaliation, courts utilize the familiar burden-shifting framework defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] Under this framework, a plaintiff is first required to establish a prima facie case of discrimination or retaliation, at which point "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (abrogated on other grounds by *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018)). Thereafter, the burden shifts back to a plaintiff to "proffer evidence demonstrating the employer's reason is pretextual." *MacKenzie*, 414 F.3d at 1274.

A.   **Prima Facie Case**

To state a prima facie case of ADA discrimination, Plaintiff is required to show 1) that he is a disabled person as defined by the ADA; 2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and 3) that his employer discriminated against him because of his disability. *Id.*

ADA retaliation claims require a plaintiff to show 1) that he engaged in a protected activity; 2) that he was "subjected to adverse employment action subsequent to or contemporaneous with the protected activity"; and 3) a "causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997)).

---

[3] Plaintiff acknowledges that the *McDonnell Douglas* framework is applicable to his ADA claims. *See* Pl.'s Resp. at 10.

9

The Court assumes, without deciding, that Plaintiff has satisfied his prime facie burden for his ADA discrimination and retaliation claims. It does so because even if Plaintiff established a prima facie case under the ADA, he has failed to identify evidence that Defendant's reason for not renewing Plaintiff's one-year contract was a pretext for discrimination or retaliation. *See Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1317 n.10 (10th Cir. 2017) ("[The Tenth Circuit has] previously affirmed a grant of summary judgment on the basis of failure to show pretext after assuming without deciding that an employee has stated a prima facie case.").

**B.     Legitimate, Non-Discriminatory Reason for Employment Decision**

Because the Court assumes that Plaintiff has satisfied his prima facie burden for both ADA claims, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for its employment decision. *See Mackenzie*, 414 F.3d at 1274.

Defendant proffers Plaintiff's marginal performance for its decision not to renew Plaintiff's one-year contract. When Mueller reviewed Plaintiff's performance, he rated Plaintiff as "marginal" in dependability, communication skills, and initiative. Mueller provided additional comments that Plaintiff "[h]as difficulty completing assigned tasks without direct supervision"; "will not provide necessary information unless asked directly multiple times"; "[c]onstantly requires direction in order to accomplish assigned tasks"; and "[w]ill not perform any tasks outside directed duties nor provide ideas on improving projects or workspace processes." Def.'s Mot., Ex. 20, Plaintiff's Performance Review.

On February 6, 2018, Sofge forwarded Mueller's review to Williams and Stephens. Def.'s Mot., Ex. 21. Relying on Mueller's performance review and Young's opinion that

10

Mueller's review lined up with his own perception of Plaintiff's performance, Young and Stephens decided to not renew Plaintiff's contract due to his subpar performance. Cox gave final approval of the non-renewal and found that Plaintiff's failure to maintain an FAA flight certificate was another indication of Plaintiff's performance issues. *See* UMF Nos. 52-53.

The Court finds Defendant's proffered reason to be legitimate and nondiscriminatory. Thus, the burden shifts back to Plaintiff to show that Defendant's reason is pretextual. *See MacKenzie*, 414 F.3d at 1274.

### C. Pretext

"A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Anderson*, 181 F.3d at 1179 (citation omitted). In determining pretext, it is not for the Court to decide whether Defendant's reasons for its decision were "wise, fair, or even correct," so long as they were truly the reasons for the decision. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1083 (10th Cir. 1999) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). The Court's role is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) (quotation and citation omitted). "[A] challenge of pretext requires [courts] to look at the facts as they appear to the person making the decision to

11

terminate [a] plaintiff." *Kendrick,* 220 F.3d at 1231. "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson*, 181 F.3d at 1179 (citing *Morgan*, 108 F.3d at 1323).

Upon consideration of the record presented, and viewing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has failed to present sufficient facts and evidence from which a reasonable finding of pretext could be made.

### i. Subordinate Bias

Plaintiff argues that Sofge "played a central role in [Defendant's] decision not to renew [Plaintiff's] contract"; that he recommended Plaintiff's contract not be renewed 2.5 months after he was disciplined for his inappropriate comments related to Plaintiff's VA disability rating; and that Sofge "falsely told [Plaintiff] that the decision not to renew his contract came from headquarters and he had nothing to do with it." Pl.'s Supp. Resp. at 14-15. As Plaintiff failed to dispute that Sofge did not make the decision regarding non-renewal of Plaintiff's contract, *see* UMF Nos. 48, 52-53, the Court construes these statements as an attempt to show pretext via a subordinate bias theory (also known as "cat's-paw" or "rubber-stamp" theory).

Under a subordinate bias theory, "an employer who acts without discriminatory intent can be liable for a subordinate's discriminatory animus if the employer uncritically relies on the biased subordinate's reports and recommendations in deciding to take adverse employment action." *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015) (citing *E.E.O.C. v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484-85 (10th Cir. 2006)).

Even assuming that Sofge acted with discriminatory or retaliatory animus, the Court concludes that a reasonable jury could not infer from Plaintiff's evidence that Defendant's decisionmakers uncritically relied on Sofge's recommendation. It is undisputed that Stephens and Young made the decision to not renew Plaintiff's contract, with final approval from Cox. *See* UMF No. 49. Their decision was based on Mueller's performance review which ranked Plaintiff as "marginal" in certain areas and "at the bottom of the aircrew stack." UMF Nos. 18-19, 52. Cox's determination was bolstered by Young's opinion that Plaintiff's marginal review was consistent with what Young had observed when he was Plaintiff's supervisor. UMF No. 52. Cox also considered Plaintiff's failure to maintain his FAA flight certificate as indicative of Plaintiff's performance issues with communication, initiative, and dependability. UMF No. 53. Plaintiff's failure to dispute any of these material facts is fatal to his theory that Defendant's decision-makers merely "rubber-stamped" Sofge's recommendation.

To the extent that Plaintiff argues a subordinate bias theory for Mueller's role in reviewing Plaintiff's performance, such an argument fails. The Court previously granted Plaintiff leave to take Mueller's deposition to fully respond to Defendant's Motion for Summary Judgment [Doc. No. 82]. At his deposition, Mueller testified that he was not made aware of Plaintiff's HR complaint until after he stopped working for Defendant. Def.'s Sur-Reply, Ex. 1, Mueller Depo. at 37:20-39:6. Mueller also testified that he was not aware that Plaintiff suffered from PTSD. *Id.* at 40:11-12. Plaintiff has not provided any evidence to support his conclusory statements that Mueller knew about Plaintiff's HR complaint or PTSD when he conducted Plaintiff's performance review. Plaintiff's

allegation that Mueller "no longer joked around with [Plaintiff]" after Plaintiff's HR complaint is insufficient for a reasonable jury to infer that Mueller acted with discriminatory or retaliatory animus in reviewing Plaintiff.

### ii.     Mere Knowledge of Defendant's HR Complaint and/or Disability

Plaintiff alleges that Stephens' participation in Defendant's decision to not renew Plaintiff's contract, with knowledge of Plaintiff's HR complaint and disability status, establishes pretext. The Court disagrees. Without more, the fact that Stephens knew of Plaintiff's HR complaint or disability status when he participated in the decision regarding Plaintiff's non-renewal does not create a reasonable inference of pretext. *See Anderson v. AOL, LLC*, 363 F. App'x 581, 586-87 (10th Cir. 2010); *see also Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1073 (8th Cir. 1998) ("Mere knowledge of a disability cannot be sufficient to show pretext; otherwise, summary judgment for an employer would be appropriate only in cases where the employer is completely unaware of the plaintiff's disability.").[4]

### iii.    Temporal Proximity

Plaintiff refers to "suspicious timing" as evidence of pretext. It is well-settled that temporal proximity, standing alone, is insufficient to establish pretext. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007) ("Although we may consider evidence

---

[4] To the extent that Plaintiff intended to make a similar argument regarding Williams' involvement, it is undisputed that Williams did not make the decision to not renew Plaintiff's contract, nor did Defendant's decisionmakers rely on a recommendation from Williams. Even if they did, Plaintiff has failed to provide any evidence that Defendant's legitimate reasoning is unworthy of credence merely because Williams had knowledge of Plaintiff's HR complaint and/or disability status.

of temporal proximity – typically used to establish a prima facie case – in analyzing pretext, … temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext.") (internal citation omitted). Although suspicious timing may be considered with other evidence of pretext, the Court finds that the more than three months between Plaintiff's mid-November 2017 HR complaint and Defendant's March 2018 decision to not renew Plaintiff's contract is not sufficient to overcome Defendant's proffered reason for its decision.[5] *See Anderson*, 181 F.3d at 1180.

### iv.   Company Policy

As other evidence of pretext, Plaintiff alleges inconsistencies in the performance review process conducted by Mueller. Specifically, Plaintiff argues 1) Defendant's review policy required a performance review to be conducted after an employee's 39th week of work and Plaintiff's occurred in his 36th week; and 2) Mueller did not have Plaintiff or Sofge (as Senior Rater) sign Plaintiff's performance review. "A plaintiff may … show pretext by demonstrating the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal quotations and citation omitted). "[T]he standard for establishing pretext requires evidence of not just any procedural shortfall, but of a 'disturbing procedural irregularity,' … often exemplified by an employer's 'falsifying or manipulating

---

[5] The Court notes that the Fifth Circuit case relied upon by Plaintiff involved a five-day period between the plaintiff's protected activity and her supervisor recommending Plaintiff's demotion. *See Evans v. City of Houston*, 246 F.3d 344, 347 (5th Cir. 2001).

of relevant criteria.'" *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 696 (10th Cir. 2008) (internal citation omitted).

Plaintiff has not adduced evidence of a disturbing procedural irregularity required for a showing of pretext. Plaintiff alleges Defendant's failure to review his performance after his 39th week establishes pretext. However, it is undisputed that Plaintiff's performance review occurred, at the earliest, on January 9, 2018, which followed his 39th week of work. *See* UMF Nos. 2, 16; Pl.'s Supp. Resp., Fact No. 14.

Plaintiff further argues that Mueller failed to have Plaintiff or Sofge sign Plaintiff's performance review, which allegedly went against Defendant's policy. Viewing this inference in favor of Plaintiff, and assuming Defendant's policy was to have employees and a supervisor sign all performance reviews, Mueller's failure to follow this policy is insufficient to establish pretext. *See Doke v. PPG Industries, Inc.*, 118 F. App'x 366, 370 (10th Cir. 2004) (finding failure to follow company policy of providing written warnings insufficient to establish pretext); *see also Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that … the substantive reasons given by the employer for its employment decision were pretextual.") (citation omitted); *Velasquez v. Frontier Medical Inc.*, 375 F.Supp.2d 1253, 1287 ("Resolving all doubts in favor of [the plaintiff], and concluding that the mandatory policy was to have the employee sign all reprimands … there is still insufficient evidence to create a genuine issue of material fact that [the defendant's] reason is pretext."). No reasonable jury could conclude that Defendant's understanding of Plaintiff as a marginal employee is unworthy of belief merely

16

because Mueller did not get his performance review of Plaintiff signed. Thus, the Court finds that Mueller's failure to obtain signatures for Plaintiff's performance review is not a procedural irregularity sufficient to raise an inference of pretext.

### v.     Plaintiff's Self-Evaluation and Colley's Check-Ride

Plaintiff further alleges that his performance was not sub-par and that a fellow Loadmaster, Jean Colley, observed on a routine check-ride that Plaintiff "was more than capable of doing his job." Pl.'s Resp. at 14. First, a co-worker's perception of a plaintiff's performance is insufficient to show pretext. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant…."). And, even if Colley had been Plaintiff's supervisor, Colley's opinion as to Plaintiff's flight capabilities are not inconsistent with Mueller's performance review, which ranked Plaintiff as "satisfactory" in *technical competence*, but "marginal" in "initiative," "communication skills," and "dependability." Def.'s Mot., Ex. 20, Plaintiff's Performance Review. Plaintiff's self-assessment of his performance similarly fails to show pretext. *See Henson v. Amerigas Propane, Inc.*, 681 F. App'x 697, 700 (10th Cir. 2017) ("[Plaintiff's] self-assessment of his performance is not enough to show pretext.").

### vi.    Disparate Treatment

Plaintiff similarly fails to adduce evidence of disparate treatment between himself and similarly situated members of the protected class. In his Supplemental Response, Plaintiff states that Colley had his contract renewed by Defendant and served for seven years. Pl.'s Resp., Fact No. 16. Plaintiff further alleges that "other loadmasters signed their evaluations[,] indicating they had had an opportunity to review and dispute any items."

17

Pl.'s Resp., Fact No. 17. Beyond these statements, Plaintiff does not attempt to show how Colley or any of the other Loadmasters were similarly situated to Plaintiff for purposes of showing disparate treatment. For this reason, Plaintiff's disparate treatment argument fails.

### vii. References to Contract Renewal

Plaintiff alleges that Defendant told Plaintiff he would get a new contract. *See* Pl.'s Resp., Fact No. 18. For support, Plaintiff cites only to his own deposition testimony of a conversation between himself and Williams. Plaintiff testified that Williams received Plaintiff's FAA flight certificate renewal and said that "if there [weren't] any issues, [Williams] would give [Plaintiff] a contract as soon as possible." Pl.'s Resp., Ex. 13, Pl.'s Depo. at 247:2-5.

Viewing the inference in favor of Plaintiff, Plaintiff still fails to show pretext. It is undisputed that Williams did not participate in the decision to not renew Plaintiff's contract, nor did Williams have the authority to make those types of decisions for Defendant. Thus, even assuming that Williams presumed Defendant would renew Plaintiff's contract if his FAA flight certificate were renewed, Williams' perception of Plaintiff's employment situation does not raise an inference that Defendant's decisionmakers' legitimate reasons for not renewing Plaintiff's contract were pretext for discrimination or retaliation.

### D. ADA Conclusion

Because Plaintiff has failed to provide evidence supporting a reasonable inference that Defendant's legitimate reason for not renewing Plaintiff's contract was pretext for discrimination or retaliation, Defendant is entitled to summary judgment on Plaintiff's ADA claims.

### III. Mitigation

Based on the foregoing conclusions, the Court declines to address the issue of mitigation.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Aviation Training Consulting, LLC's Motion for Summary Judgment and Brief in Support [Doc. No. 66] is **GRANTED**. A separate judgment will be entered.

**IT IS SO ORDERED** this 14th day of September, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge